**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No: 1:06-cv-01235-WDM-BNB

HART'S ROCKY MOUNTAIN RETREAT, INC.,
a Colorado corporation,

      Plaintiff,

v.

KENNETH GAYHART and
ANGELIC GAYHART,

      Defendants.

---

**PLAINTIFF'S PROPOSED PRELIMINARY INJUNCTION ORDER**

---

This matter is before me on Plaintiff's Motion for a Preliminary Injunction.  On

October 11, 2006, the Court held a one-day hearing on this matter.  Having considered

the parties' submission and the evidence presented at the hearing, I find and conclude

as follows:

**I.  FINDINGS OF FACT**

1.    Defendants Angelic and Kenneth Gayhart moved to Pagosa Springs,

Colorado in 1993, purchased their ranch and named their ranch "Hart Land Ranch."

Their sign on their ranch (Pl. Exh. 55) includes the name "Hart Land Ranch" and the

heart symbol, and was used from approximately 1993 forward.

2.    Plaintiff began its cabin rental business in 2000 and used the name "Hart's

Rocky Mountain Retreat," along with the heart symbol, in a logo that Plaintiff's principals

developed.  At that time, Plaintiff's principals were aware of the Gayharts' Hart Land Ranch.

3.      Plaintiff's principals used a logo for their own snowmobile trailer that was similar to the logo on the Defendants' snowmobile trailer, showing a general awareness among the parties of the Defendants' pre-existing use of the Hart Land Ranch name and heart symbol.

4.      The Defendants began using the names, Hart Land Ranch and Hartland Ranch, along with the heart symbol, to identify their cabin rental business beginning in 2005.  The Gayharts opened the cabins for business in mid-2006.

5.      The Defendants' cabins' name, The Cabins at Hart Land Ranch, was suggested by a non-party consultant, Toby Karlquist, since that was the name of Defendants' ranch.

6.      Members of the Pagosa Springs community familiar with Plaintiff were confused about the Defendants' cabins' affiliation with Plaintiff, particularly with regard to a "Sundowner" event at the Gayharts cabins.

## II.  CONCLUSIONS OF LAW

1.      A party seeking a preliminary injunction bears the burden of showing (1) a substantial likelihood that it will prevail on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury to Plaintiff outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest.  *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991); *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980).

2.    Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal.  *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1255-56 (10th Cir. 2003).

3.    The Tenth Circuit recognizes a modified-likelihood-of-success-on-the-merits standard, under which, if the plaintiff can establish that the latter three requirements tip strongly in its favor, the test is modified, and the plaintiff may meet the requirement for showing success on the merits by a lesser or more liberal standard that questions as to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation.  *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1255-56 (10th Cir. 2003).

4.    The Tenth Circuit recognizes three types of disfavored injunctions:  (1) a preliminary injunction that disturbs the status quo; (2) a preliminary injunction that is mandatory as opposed to prohibitory; and (3) a preliminary injunction that affors the movant substantially all the relief he may recover at the conclusion of a full trial on the merits."  *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2005), *cert. granted*, 544 U.S. 973, 125 S. Ct. 1846, 161 L.Ed.2d 723 (2005).  The Court finds that none of these three categories apply, and Plaintiff does not request a disfavored injunction.

5.    I find that Plaintiffs' showing of the latter three factors for a preliminary injunction under *Lundgrin* and *SCFC ILC, Inc.*, as set forth in paragraphs 6, 7 and 8 below, is sufficiently strong to justify the modified standard.

6.      In trademark law, if a trademark is established, infringement is presumed to be an irreparable injury.  Here, there is also some evidence of confusion, and therefore clear and unequivocal evidence of irreparable injury.  Therefore, Plaintiff prevails on this prong.

7.      The second prong is the balance of harm.  A trademark is a legally protected interest which Plaintiff is entitled to protect.  There are countervailing considerations although here, the Gayharts are not using their own surname.  The Defendants also have incurred expenses and, therefore, risk some harm if the injunction issues.  But, protecting trademarks and the risk of confusion here balances this prong in Plaintiff's favor.

8.      The third prong is whether the requested injunction will protect the public interest.  It is in the public interest to protect trademarks.  It also is in the public interest to encourage competition and to protect the use of an established name.  On this prong, the balance weighs in Plaintiff's favor.

9.      The fourth prong is the likelihood of success on the merits.  As discussed above, the Tenth Circuit's modified-likelihood-of-success-on-the-merits standard is applicable here rather than the clear and unequivocal proof of likelihood of success standard.

10.     To prevail in an action for trademark infringement, a plaintiff must establish that (1) its mark is protectable, and (2) the defendant's use of an identical or similar mark is likely to cause confusion among consumers.  *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir. 2004).

11.     In determining whether a likelihood of confusion exists between two marks, the Tenth Circuit considers the following non-exhaustive factors:  (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks.  *E.g.*,  *King of the Mountain Sports,  Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089-90 (10th Cir. 1999).   Each is considered below in paragraphs 12-16.

12.     The first factor is similarities between the marks.  I am to consider both the similarities and the differences between the marks, and similarities are given more weight than differences.  Here, the differences are in the marks' presentation and the full marks: Hart's Rocky Mountain Retreat and The Cabins at Hartland Ranch.  The similarities are the heart symbol and the "Hart" name.  This factor weighs in favor of Plaintiff.

13.     The second factor is the intent of the alleged infringer.  While Plaintiff has an argument that the Defendants were aware of Plaintiff's business and followed that business, the evidence shows that the Defendants used the Hart Land Ranch name before Plaintiff used its mark and that a third-party suggested "The Cabins at Hart Land Ranch" name.  This factor weighs in favor of the Defendants.

14.     The third factor is evidence of actual confusion.  There is evidence that actual confusion exists among some people in the Pagosa Springs community, as well as two people outside that community.  I note that, other than one person, there is no

evidence of customer confusion.   In addition, the Defendants offered competing testimony regarding the existence of local confusion.   However, taking the evidence as a whole, this factor weighs in favor of Plaintiff.

15.     The fourth factor is the similarity of the parties' products and the manner of their marketing.   Here, there is similarity in both and this factor weighs in favor of Plaintiff.

16.     The fifth factor is the degree of care exercised by prospective purchasers. I conclude that people do exercise care in selecting vacation lodging, particularly in the $200-300 price range of the cabins at issue here.   Therefore, this factor weighs in favor of the Defendants.

17.     The sixth and final factor is the strength of the trademark for which protection is sought.   Plaintiff has used its trademark for six years.   There is significant evidence of Plaintiff's advertising and promotional efforts in order to connect its product with its trademark in the public mind.   While the Tenth Circuit has not adopted Judge Posner's reasoning regarding the protection of surnames in *Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 988 (7th Cir. 2004), the reasons to justify the proper name rule – whereby a proper name is viewed as descriptive and secondary meaning is required to establish that it is a protectable mark – are not present here.   I do not resolve whether Plaintiff's mark is suggestive but find that it is more than merely descriptive or generic. To the extent that Plaintiff's mark is descriptive, the evidence shows that it has acquired a secondary meaning.   As a result, Plaintiff's trademark has some strength, particularly

related to the heart symbol and the Hart name.  Therefore, this factor weighs in favor of Plaintiff.

19.     Applying the modified-likelihood-of-success-on-the-merits standard, Plaintiff has demonstrated that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation.

20.     The Court finds that Plaintiff has a protectable trademark in the name Hart's Rocky Mountain Retreat, Inc. and the heart symbol it uses in conjunction with that name.

21.     The Court finds that Plaintiff is entitled to a preliminary injunction enjoining the Defendants from using the heart symbol and the "Hart" name alone in the cabin rental business.  The Defendants may use the combined "Hartland" name, provided that it is used without a heart symbol.

22.     The Court further finds that a bond of $20,000 is appropriate to protect the Defendants from any damages they might suffer.  This is an appropriate amount because the Defendants have spent approximately $10,000 in advertising and will likely spend a comparable amount in further advertising consistent with this preliminary injunction.  Plaintiff shall have the option of paying the bond in cash or obtaining a surety bond.

## III.  ORDER

It is therefore ordered that Kenneth and Angelic Gayhart are hereby enjoined from using the heart symbol and the name "Hart" as a separate word in their cabin

rental business.  This Order shall be effective upon Plaintiff's posting of a bond with the

Court, and shall continue in effect until further order of the Court or upon judgment after

a trial on the merits.

DATED at Denver, Colorado, on November 8, 2006.

BY THE COURT:


s/ Walker D. Miller
United States District Judge